versus Tim's. Council, whenever you're ready. Good evening, Russell. Good evening, gentlemen. The trial judge in this case and Mrs. Tim argues that it was the settler's intent when he prepared this trust to provide his daughter with the residence on this property and that the language of the trust sets out that intent on the part of the settler. And apparently what the position they take and the judge too is that that's that intent to have provided with the residence on this property is there and exists, despite whether or not structure existing. That if she just intends on returning to some place on that property to reside, that's good enough. The trust should continue. I'm sorry, the life estate interest in the property should continue. And we just we just simply disagree with that position. The trust, in fact, allows her to have a life estate. But with some conditions. The primary condition is that she is entitled to a life estate so long as she is domiciled in the residence. Well, I think the record clearly shows that that residence no longer exists. It's not there. Does it make a difference that the intention is to rebuild it? The settler could have provided for that, but the settler didn't. The settler only provided for her who will be allowed to live in that residence so long as she lives in the residence. And so if the residence doesn't exist, then she can't meet that condition. And so the life estate must be terminated. The life estate also has some defeasance language. And that language is that the life estate will terminate if she moves from the residence and establishes another domicile. Well, the defendants are taking that Mrs. Timms is taking a position that she claims that she still lives there. She still lives there. That's her intent to live there. And but, you know, she can say that all she wants. She can swear to it and think that that's the case. But the facts of the situation rely on that point of view because she can't live in the residence because the residence no longer exists. Did the address change? No. That's going to do with it, though. I just thought it was a good question. What remains are just a hold down. Okay. Was there a fire? I read so many of these. What happened to the building? It didn't burn all the way down, but it burned sufficiently. Was it a total loss? Yes. Okay. It was dismantled all the way. It wasn't safe. It wasn't safe for them to do anything to make it work. Right. Could not build on that foundation, as I understand it. So then the defendants take the position, well, why can't we just build a new house? And we take the position because it's not meeting the terms of the trust. It's not the new house is not going to be my house on that trail down the road. It's going to be some other house. And she he gave her a lot of interest only in that particular house. He could have he could have made the language different and provide for a situation like this, but he didn't. And I think that we and this board are stuck with the words of that dress in the present form. The plaintiff in there in her brief argues that her intention to raise to take up residence there again, account for something. And I don't believe that we think that her intention is irrelevant. There's nothing in the language in the press that addresses her intent. It only says that she can live in the house so long as so long as they're not there. She can't live in the house. And as a result, the life safety interest needs to be terminated. Well, I thought I would say she can live in the house as long as she is alive. Right. More or less. It doesn't say as long as the house is there. It just says so it's a life estate. That's right. Right. Well, she's alive. And as long as she continues to talk about it in the house. And at page seven in her brief, the respondent says that the. That was mentioned in his language was that she can live in that house unless she voluntarily relinquishes her right to do so. And we take the position that there is nothing, no language in the press that provides for that argument at all. It doesn't say that. It says that, again, she has life states in my residence. And it says nothing about her relinquishing those rights or not. Then on page seven, the. Well, was she ordered not to live in that building or anything was. You say relinquish. Was she ordered not to live in that? No, that's just the phrase that she uses. I mean, in the facts in the case, was there any evidence of why she didn't live in that building? Anybody said that you can't live in that building. After the fire became unlivable, so it was torn down. She took those steps on her own. Is that in the county or the city? It's I believe it's an unincorporated area. Then also on page 12, Miss Tim takes position that the. But the term residence does not mean that particular house. There's no support for that either. We don't believe. And in one sentence, the seller defines the residence as my residence and that she had to live in that residence. So it's fairly is the fact that the seller was referring to that specific structure, not some other structure that might someday exist. I would just believe that the word is is clear. That the seller was talking about this particular house and she has the she needs. She had to stay so long as she is a resident of that house. She is not a resident of that house. And that's the state. Thank you. Thank you. Good afternoon, your honors. May it please the court. My name is Grant Lee and I represent Mary Tim's. Your honors, this is a case about a life estate, a life estate granted to Mary Tim's by her father. In the Fifth Amendment to his present revocable trust. The life estate was granted according to the terms stated in the amendment and in the trust document. Your honors, we maintain that if at all possible, the trust should be read and presumed to preserve the life estate granted to Mary Tim's. The circuit court below Judge Harrison ruled that the life estate survived the fire. The trust provides that life estate may only be terminated by Mary's voluntary acts or her death. The trial court also ruled that Mary was entitled to rebuild a home on the property if she was wish. And finally, the trial court found that Mary was entitled to the insurance proceeds that she had obtained on the property with her own funds. Mr. Perkins, the settler, or as his son Greg refers to him in documents, Marvin, amended his trust for a fifth time. And he made a plain statement in that trust as to why. At that time, he expressed worry about his other son, a son named John. You may recall if you read the record, he's the one that repeatedly interjected from the gallery and interrupted Judge Harrison. You may also recall from the record a letter from Greg Perkins, the appellant in this matter, which we've attached as an exhibit to our brief and provided to the court below, to understand and to get a real sense of why Mr. Perkins was concerned and wanted to provide for his daughter. Your honors, we don't quite know if Greg Perkins is John Perkins' proxy, or if his vitriolic hatred towards his sister Mary is all of his own. But certainly, Mr. Marvin made the sense that Mary needed some help. Your honors, we maintain that should you read the trust, amendment number five, in conjunction with the trust as a whole, to determine Mr. Perkins' intent with respect to the life estate, we believe that it will be clear what his intent was. Greg Perkins would have this court believe that his father intended some special meaning when he used the words residence. It was Mr. Perkins' burden at the trial court to prove that special meaning, and he failed to do so. His efforts to have this court search for a meaning for the word residence show that he's desperately trying to find a hook to get his sister out of the life estate. We maintain that his efforts are in vain, as he is not doing his one must, which is relying on the words in the trust. What Mr. Perkins fails to acknowledge is that the trust his father created provides for the specific instances when Mary's life estate would terminate. One of them was not at the house burndown. By his trust, Mr. Perkins, in essence, gave Mary control of if her life estate would terminate prior to her death. One need only look at the trust for the events that Marvin Perkins decided would make Mary terminate her life estate. Those events that would terminate the life estate have not occurred. In particular, Mary's never changed her domicile. And in order to terminate her life estate, the trust language requires that Mary, one, move from the residence, and two, change her domicile. Well, admittedly, Mary had to move from the old blue house on the property, which happens to be in the city of Detroit. The residence, if Greg Perkins insists on calling it that, she had to move out of the house. It burned down. Prior to it burning down, Mary had upgraded the house and updated the house. Put in all new windows. Upgraded the house at great expense to herself. She had no choice but to move because the house burned down. But never has she changed her domicile and her intent to return to the property. We assert that she retains her life estate and intends to live a long life and enjoy the life that she has, including her life estate and the property that she was provided for by her father in his last amended trust. Your honors, under Illinois law, a life estate is presumptively for the life of the holder. And we ask this court to affirm the lower court and find that Mary's life estate is intact. We also ask that Mary finally be allowed to commence rebuilding a home on the life estate property and to be able to exercise her rights as a life tenant there under. And the other relief that we've pressed in our briefs. That's all I have this afternoon, your honors, unless there are any questions. I don't believe there are. Thank you, counsel. Thank you very much. With regard to the insurance proceeds, we concede that the Honeyman case would require that since she paid for the insurance on the house, she should be entitled to those insurance proceeds and she can use those insurance proceeds to build a house where she wants to build it. I. The. To this date, I don't believe that the defendant in this case has addressed. The issues created by the language of the trust says she is entitled to her life estate interest in the house so long as she resides in that. There's never been that issue has never been addressed by the defendant. And I believe the reason is because it's just so crystal clear that that language means what it says. That is, if the house isn't there, then how can you have a life interest? Because you can't live in. I think this case is all done in something that very simple. Thank you. Appreciate. Excuse me. Briefs and arguments. Council will take the case under advice. Thank you.